UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CARL SMEED,

    Plaintiff,

v.                              Case No: 2:16-cv-489-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

Before the Court is Plaintiff Carl Smeed's Complaint (Doc. 1) filed on June 22, 2016. Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for disability, disability insurance benefits, and supplemental security income. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.    Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

    **A.    Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work or any other

substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

## B.     Procedural History

On November 14, 2012, Plaintiff filed an application for disability and disability insurance benefits ("DIB") and on January 25, 2013, Plaintiff filed an application for supplemental security income ("SSI"). (Tr. at 79, 80, 200-231). Plaintiff asserted an onset date of June 1, 2006. (*Id.* at 200, 225). Plaintiff's applications were denied initially on May 15, 2013, and on reconsideration on August 1, 2013. (*Id.* at 79, 80, 102, 103). A hearing was held before Administrative Law Judge ("ALJ") Donald E. Garrison on October 16, 2014. (*Id.* at 36-60). The ALJ issued an unfavorable decision on November 7, 2014. (Tr. at 19-28). The ALJ found Plaintiff not to be under a disability from June 1, 2006 through the date of the decision. (*Id.* at 28).

On April 29, 2016, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1-5). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on June 22, 2016. (Doc. 1). This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 20).

## C.     Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir.

2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through June 30, 2006. (Tr. at 21). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2006, the alleged onset date. (*Id.*). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: major depressive disorder, learning disorder not otherwise specified, status-post closed head injury, and status-post fracture of the right leg with length discrepancy. (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. at 22). At step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to:

> lift and carry up to ten pounds. He is able to sit up to six hours in an eight-hour workday. He is capable of walking and standing up to two hours in an eight-hour workday. He is limited to engaging in occasional postural activities, such as

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

climbing, balancing, stooping, crouching, kneeling, and crawling. He must never be exposed to heights, moving machinery, or driving. He is limited to understanding, remembering, and carrying out short and simple instructions. He is limited to making judgments on simple work-related decisions. He is limited to occasional contact with supervisors and coworkers. He must never have contact with the public. He is illiterate.

(*Id.* at 23).

The ALJ determined that Plaintiff was not capable of performing his past relevant work as a tattoo artist. (*Id.* at 27). After considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.*). Specifically, the ALJ determined that Plaintiff was able to perform the following jobs: (1) tuner/textile, DOT # 782.687-030, sedentary, unskilled, with an SVP of 1; (2) blower/stuffer, DOT # 731.685-014 sedentary, unskilled, with an SVP of 2; and (3) small assembler, DOT # 706.684-030, sedentary, unskilled, with an SVP of 2. (*Id.* at 27-28).[2] The ALJ concluded that Plaintiff was not under a disability from June 1, 2006, through the date of the decision. (*Id.* at 28).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.

---

[2] "DOT" refers to the *Dictionary of Occupational Titles*.

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

On appeal, Plaintiff raises the following five (5) issues:

1) Whether the ALJ violated Plaintiff's due process rights given that he prohibited cross-examination of the vocational expert concerning the basis for the number of jobs that the vocational expert said were available in the national economy.

2) Whether the ALJ erred in precluding Plaintiff from properly addressing the conflict between the vocational expert testimony and the DOT given that the vocational expert inaccurately characterized the reasoning level of some of the jobs identified by the vocational expert and given that the demands of such jobs exceeded Plaintiff's RFC.

3) Whether the ALJ properly assessed Plaintiff's RFC given that the RFC did not include Plaintiff's anxiety, sleep disturbance, scoliosis, reported aneurysms, and heart murmur.

4) Whether the Commissioner met her burden of showing that there are a significant number of jobs that exist in the national economy that Plaintiff could perform given that the ALJ found that Plaintiff is illiterate and given that all the jobs identified by the vocational expert require reading and recognizing the meaning of 2500 words and printing simple sentences containing subject, verb, and object.

5) Whether the Commissioner met her burden of showing that there are significant number of jobs that exist in the national economy that Plaintiff could perform given

> that the ALJ did not include in the hypothetical question to the vocational expert Plaintiff's anxiety, sleep disturbance, scoliosis, reported aneurysms, and heart murmur and given that in order for the vocational expert testimony to constitute substantial evidence, the ALJ was required to pose a hypothetical question which comprised all of Plaintiff's limitations.

(Doc. 21 at 1-2).

### A. Whether the ALJ Violated Plaintiff's Due Process Rights by Barring Cross-Examination of the Vocational Expert Concerning the Basis of the Number of Jobs Available in the National Economy.

Plaintiff argues that when Plaintiff's representative attempted to explore the issue of the source of the vocational expert's job numbers, the ALJ stopped the representative from cross-examining the vocational expert on this issue in violation of Plaintiff's due process rights. (Doc. 21 at 10). Plaintiff also raises a second issue that the ALJ erred in relying on the vocational expert's testimony because the vocational expert relied solely on SkillTran to arrive at the number of jobs in the national economy. (*Id.* at 16).[3]

The Commissioner argues that the Eleventh Circuit has rejected arguments challenging the methodology underpinning a vocational expert's testimony. (Doc. 23 at 5).

In completing the five-step sequential process, the ALJ has a duty to develop a full and fair record, whether the claimant is represented by counsel or not. *Mosley v. Acting Comm'r of Soc. Sec. Admin.*, 633 F. App'x 739, 741 (11th Cir. 2015) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). Nevertheless, the claimant bears the burden of proving that he is disabled and, accordingly, is responsible for producing evidence to support his claim. *Id.* Moreover, remand is required only when:

> . . . "the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 2015). In other words,

---
[3] This second argument was raised by Plaintiff later in his brief. (*See* Doc. 21 at 16). Because this issue relates to the vocational expert's testimony regarding the number of jobs in the national economy, the Court will address this issue out of order.

"there must be a showing of prejudice before we will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [ALJ] for further development of the record." *Id.* Prejudice requires a showing that "the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985).

*Id.* at 742.

Here, Plaintiff argues that the ALJ failed to afford Plaintiff his due process rights by failing to allow Plaintiff's representative the opportunity to fully explore the issue of the source of the vocational expert's job numbers. The exchange concerning job numbers is as follows:

| | |
|---|---|
| ATTY: | Then, the source of your job numbers, please. |
| VE: | Can you give me – on the puller through, nationwide, 395,000; 500 Florida. |
| ATTY: | Oh well, I'm sorry. Will you – |
| ALJ: | He's asking for the source. |
| VE: | Oh. |
| ATTY: | Thank you, your honor. |
| ALJ: | He's asking for the source. |
| VE: | Oh, the source? From Skill Tran [sic]. |
| ATTY: | And how does Skill Tran [sic] come up with their numbers? |
| ALJ: | We're not going to go into that. |
| ATTY: | Well then, I'll – |
| ALJ: | He stated the basis for his opinion. |
| ATTY: | Exhibits 16E and 17E, I'll just rely on those objections, the written objections, your honor. I have – |
| ALJ: | Very well. |
| ATTY: | – no further questions, thank you. |
| ALJ: | The objections that you call my attention to are overruled. All right, any closing argument? |

(Tr. at 57-58).

Plaintiff's counsel asked the source of the vocational expert's job numbers. (Tr. at 58). The vocational expert responded SkillTran. (*Id.*). Plaintiff's counsel then asked the vocational expert how SkillTran arrives at its numbers. (*Id.*). The ALJ foreclosed that inquiry. (*Id.*). The Court recognizes that when a vocational expert testifies as to the source or sources of his

7

estimates for jobs, a vocational expert is not required to "provide a comprehensive statistical explanation of how he arrived" at the number of jobs in the national economy that a plaintiff is able to perform. *See Pena v. Comm'r of Soc. Sec.*, 489 F. App'x 401, 402 (11th Cir. 2012); *see also Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012) (after vocational expert testifies that she based her opinion on census figures, state information, labor market surveys, and job analyses, she was not required to provide detailed reports or statistics and the ALJ is permitted to rely on her opinion).

In this case, however, Plaintiff also argues that the vocational expert's sole reliance on SkillTran does not constitute substantial evidence such that an ALJ may rely on that information. (*See* Doc. 21 at 16). In making this argument, Plaintiff relies upon *Thompson v. Comm'r of Soc. Sec.*, No. 2:15-CV-53-FTM-CM, 2016 WL 1008444, at *1 (M.D. Fla. Mar. 15, 2016). (Doc. 21 at 16). In *Thompson*, the plaintiff sought judicial review of the denial of her claim for Social Security disability insurance benefits and supplemental security income. *Id.* The District Court held, *inter alia*, that when a vocational expert relies solely on a computer-based program such as SkillTran to determine whether jobs exist in significant numbers in the national economy and does not endorse those numbers based on her knowledge and expertise, then the vocational expert's testimony is unreliable. *Thompson*, 2016 WL 1008444, at *6; *see also Hancock v. Comm'r of Soc. Sec.*, No. 6:15-CV-206-ORL-DNF, 2016 WL 4927642, at *4 (M.D. Fla. Sept. 16, 2016).

Here, the vocational expert testified that he relied on SkillTran as the sole source of his information to determine whether there were a significant number of jobs in the national economy that Plaintiff could perform. (Tr. at 58). The ALJ then foreclosed further inquiry on the source of these statistics. (*Id.*). The record in unclear, however, as to whether the ALJ would

8

have allowed Plaintiff's counsel to ask additional questions regarding the vocational expert's testimony as to the number of jobs in the national economy – not related to how SkillTran derived its number – or if any further inquiry on that point was also foreclosed.

Nonetheless, the ALJ ultimately relied on the vocational expert's testimony in the decision. (*See id.* at 27). Such reliance on SkillTran alone without the vocational expert's endorsement of the resulting numbers based on the vocational expert's knowledge and experience is unreliable. *See Thompson*, 2016 WL 1008444, at *6. The Court finds that the ALJ erred in relying on the vocational expert's testimony as to the number of jobs in the national economy based solely on SkillTran. *See Thompson*, 2016 WL 1008444, at *6. To be clear, the Court finds that the ALJ did not err in foreclosing Plaintiff's representative from further inquiry as to how SkillTran derives it numbers. The Court finds that the ALJ did err, however, by failing to elicit testimony from the vocational expert as to whether – based on the vocational expert's knowledge and experience – the vocational expert endorsed SkillTran's job numbers. *See Pena*, 489 F. App'x at 402; *Thompson*, 2016 WL 1008444, at *1. Therefore, the ALJ's decision was not supported by substantial evidence as to the number of jobs in the national economy that Plaintiff is able to perform.

    **B.**    **Whether the ALJ Erred in Precluding Plaintiff from Addressing the Conflict Between the Vocational Expert's Testimony and the DOT.**

Plaintiff argues that even though the vocational expert claimed that his testimony did not conflict with the DOT, his testimony did in fact conflict. (Doc. 21 at 12). Specifically, Plaintiff argues that the jobs of stuffer and atomizer assembler both have a reasoning level of 2 in the DOT whereas the vocational expert testified that these jobs have a reasoning level of 1. (*Id.*). Plaintiff claims that a reasoning level of 1 corresponds to the limitations in the ALJ's hypothetical for an individual who is able to understand, remember, and carry out short simple

9

instructions and a reasoning level of 2 exceeds this individual's capabilities. (*Id.* at 12-13). Further, Plaintiff argues that the requirements for reasoning level 2 jobs – of being able to follow written instructions – contradicts the hypothetical posed to the vocational expert in that the ALJ limited the individual to a person who is not able to read and write. (*Id.*).

The Commissioner responds that even if there is a conflict, the vocational expert's testimony trumps the DOT and remand serves no purpose. (Doc. 23 at 8-9).

At step five of the sequential evaluation, the ALJ must determine whether jobs exist in significant numbers in the national economy that a plaintiff can perform. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). "The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform." *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004). An ALJ may use the Medical Vocational Guidelines or may obtain the testimony of a vocational expert to determine whether there are jobs that exist in the national economy that a claimant can perform. *Winschel*, 631 F.3d at 1180. If the ALJ decides to use a vocational expert, for the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)).

> Under SSR 00-4p:
>
> [w]hen a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> Ask the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT; and

> If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will
> obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704, at *4, Dec. 4, 2000.

In this case, the ALJ limited Plaintiff to jobs where he could understand, remember, and carry out short and simple instructions and was further limited to making judgments on simple work-related decisions. (Tr. at 23). The ALJ included these limitations in the hypothetical to the vocational expert. (*Id.* at 54-55). With these limitations, the vocational expert found that Plaintiff was capable of performing work as a puller/turner; blower/stuffer; and small assembler/atomizer assembler. (*Id.* at 55-56). Further, at the outset of the hearing, the ALJ specifically asked that the vocational expert's testimony be consistent with the DOT unless the vocational expert indicated otherwise. (*Id.* at 39). The vocational expert agreed. (*Id.*). Thus, the ALJ complied with SSR 00-4p.

Even though the ALJ did not err in relying on the vocational expert's testimony regarding reasoning levels and literacy, the issue becomes whether this action should be remanded due to the vocational expert misleading the ALJ as to the reasoning levels of two jobs. It is undisputed that the vocational expert mistakenly testified that all three jobs had a reasoning level of one, but in actuality two of the three jobs had a higher reasoning level. (Tr. at 57; Doc. 23 at 8). The vocational expert correctly identified the job of "puller through or a turner in the textile garment manufacturing industry" as having an SVP of 1 and a reasoning level of 1. (*See id.* at 55, 57). By testifying correctly as to one job, the Court considers whether the vocational expert's mistake was harmless error. Upon consideration, the Court finds it is not. First, the ALJ relied on the vocational expert's mistaken testimony to reach his decision and the Court cannot know how important this testimony was to the ALJ's final decision. *See Akins v. Comm'r of Soc. Sec.*, No. 608-CV-1575-ORL-DAB, 2009 WL 2913538, at *7 (M.D. Fla. Sept. 10, 2009). Second, as

stated above, the Court finds that this case must be remanded on other grounds. Accordingly, the Court finds it appropriate to remand this action to allow a vocational expert to properly testify as to the reasoning level of the jobs that Plaintiff may be able to perform.

> **C. Whether the ALJ Erred in Failing to Include in Plaintiff's RFC Limitations Based on Plaintiff's Anxiety, Sleep Disturbance, Scoliosis, Reported Aneurysms, and Heart Murmur.**

Plaintiff contends that the ALJ failed to include in Plaintiff's RFC limitations for his anxiety, sleep disturbance, scoliosis, reported aneurysms, and heart murmur. (Doc. 21 at 19). Plaintiff cites to the record to show that Plaintiff was diagnosed with these impairments. (*Id.* at 19-20).

The Commissioner responds that the ALJ included all of Plaintiff's functional limitations in the RFC and, further, Plaintiff failed to show that even if he was diagnosed with these impairments, these impairments caused additional functional limitations. (Doc. 23 at 9-10).

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In determining a claimant's RFC, the ALJ must consider all of the relevant evidence of record. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). However, the Eleventh Circuit has consistently held that "the claimant bears the burden of proving that [he] is disabled, and consequently, [he] is responsible for producing evidence in support of [his] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Here, the ALJ considered Plaintiff's diagnoses of anxiety, sleep disturbance, and scoliosis in the decision. (*See* Tr. at 21, 25). Specifically the ALJ noted that Plaintiff reported that his mood was anxious and he complained of insomnia in December 2012. (*Id.* at 25). Further, the ALJ noted that Plaintiff reported he was more anxious and suffered from erratic sleep patterns and sleep disturbance in April 2013. (*Id.*). The ALJ considered references in the record to Plaintiff's scoliosis, but concluded that overall the medical records indicate that this condition was non-severe based upon x-rays failing to show any acute abnormalities and Plaintiff never receiving treatment for this impairment. (*Id.* at 21, 25). The ALJ did not mention Plaintiff's reported aneurysms or heart murmur. (Doc. 21 at 20).

Although Plaintiff argues that the ALJ erred in failing to include diagnoses for anxiety, sleep disturbance, scoliosis, reported aneurysms, and heart murmur in the RFC, a "diagnosis . . . is insufficient to establish that a condition caused functional limitations." *Wood v. Astrue*, 2012 WL 834137, at *5 (M.D. Fla. Feb. 14, 2012) (citing *Moore v. Barnhart*, 405 F.3d 1207, 1213 n.6 (11th Cir. 2005)). Plaintiff fails to meet his burden of showing that these impairments cause functional limitations above and beyond those assessed by the ALJ or cause or worsen his identified functional limitations. *See Ellison*, 335 F.3d at 1276; *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013). Therefore, the Court finds that the ALJ did not err in failing to include Plaintiff's diagnoses of anxiety, sleep disturbance, scoliosis, reported aneurysms, and heart murmur in Plaintiff's RFC. However, because the Court finds remand appropriate on other grounds, the Court will direct the Commissioner to address Plaintiff's anxiety, sleep disturbance, scoliosis, reported aneurysms, and heart murmur on remand.

**D. Whether the ALJ Erred in Finding a Significant Number of Jobs in the National Economy that Plaintiff Could Perform for an Individual Who Cannot Read or Write**

Plaintiff states that the ALJ found Plaintiff to be illiterate and then argues that this finding precludes Plaintiff from being able to perform all of the jobs identified by the vocational expert. (Doc. 21 at 21). Specifically, Plaintiff argues that these jobs require an individual to be able to: (1) recognize the meaning of 2,500 words; (2) read at a rate of 95-120 words per minute; (3) print simple sentences containing subject, verb, and object; (4) and write a series of numbers, names, and addresses. (*Id.*). Plaintiff contends that based upon the ALJ's finding that Plaintiff is illiterate, he is unable to perform any of the jobs identified by the vocational expert. (*Id.*). The Commissioner argues that the vocational expert testified that none of the positions he identified required an individual to be able to read to perform the job and, thus, Plaintiff is able to perform these jobs. (Doc. 23 at 11-12).

At step five of the sequential evaluation, the ALJ must determine whether jobs exist in significant numbers in the national economy that a plaintiff can perform. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). An ALJ may use the Medical Vocational Guidelines or may obtain the testimony of a vocational expert to determine whether there are jobs that exist in the national economy that a claimant can perform. *Winschel*, 631 F.3d at 1180. If the ALJ decides to use a vocational expert, for the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)).

At the hearing, the ALJ included in the hypothetical that the individual could not read and write. (Tr. at 54). Later, the vocational expert specifically addressed the issue of literacy as it relates to these jobs. (*Id.* at 57-58). The vocational expert testified that these jobs are "not

reading jobs. They're basically strictly show the person how to do it, they can do it." (*Id.* at 57).
Thus, the vocational expert explained that the jobs identified did not require a reading level above Plaintiff's ability and the Court finds that the ALJ did not err in relying on this portion of the vocational expert's opinion. Nonetheless, because the Court is remanding this case on other issues, the Court will direct the Commissioner to reconsider Plaintiff's inability to read and write at step five.

      E.      **Whether the ALJ Erred in Failing to Pose a Complete Hypothetical**

Plaintiff argues that the ALJ failed to include Plaintiff's anxiety, sleep disturbance, scoliosis, reported aneurysms, and heart murmur in the hypothetical question to the vocational expert. (Doc. 21 at 22). The Commissioner responds that the ALJ's hypothetical included all of Plaintiff's limitations. (Doc. 23 at 9-11). As stated above, the Court finds that the ALJ did not err in failing to include further limitations in the RFC for Plaintiff's anxiety, sleep disturbance, scoliosis, reported aneurysms, and heart murmur. Thus, the ALJ is not required to include findings in the hypothetical that the ALJ found to be unsupported by the record. *See Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)). Consequently, the Court finds that the ALJ did not err in failing to include Plaintiff's anxiety, sleep disturbance, scoliosis, reported aneurysms, and heart murmur in the hypothetical to the vocational expert. Again, because this case is being remanded for other issues, the Court directs the Commissioner to reconsider any hypothetical posed to a vocational expert.

**III.     Conclusion**

Upon consideration of the submission of the parties and the administrative record, the Court finds that the decision of the Commissioner is not supported by substantial evidence as to the number of jobs that Plaintiff is able to perform in the national economy.

**IT IS HEREBY ORDERED:**

(1) The decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to:

   a) properly consider the evidence concerning the number of jobs Plaintiff is able to perform;

   b) reconsider the reasoning level of the jobs that Plaintiff is able to perform and any inconsistency between the vocational expert's testimony and the DOT;

   c) reconsider limitations as to Plaintiff's anxiety, sleep disturbance, scoliosis, reported aneurysms, and heart murmur in Plaintiff's RFC and in any hypothetical posed to a vocational expert; and

   d) further consider Plaintiff's illiteracy when determining if jobs exist that Plaintiff is able to perform.

(2) If Plaintiff prevails in this case on remand, Plaintiff must comply with the Order (Doc. 1) entered on November 14, 2012, in Misc. Case No. 6:12-mc-124-Orl-22.

(3) The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

**DONE AND ORDERED** in Fort Myers, Florida on September 26, 2017.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties